UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN DOE, ) ) ) Plaintiff, ) ) v. ) ) ) CITY OF PEABODY, ) ) Defendant. ) ) ) ) | Case No. 19-cv-11939-DJC |

**MEMORANDUM AND ORDER**

CASPER, C.J.                                                                     **March 19, 2026**

I.    **Introduction**

Plaintiff John Doe ("Doe") filed this lawsuit against City of Peabody (the "City"), along with an individual defendant who has since been dismissed, D. 45, alleging violations of state law (Count I alleging violation of right to be free of sexual harassment pursuant to Mass. Gen. L. c. 214 § 1C ("Section 1C"), and Count II alleging negligence) and federal law (Counts III and IV asserting § 1983 due process and equal protection claims, respectively; Count V asserting a Title IX claim; and Count VI alleging a violation of § 504 of the Rehabilitation Act) arising out of the sexual assault of Doe by his high school special education paraprofessional, Lynette Occhipinti ("Occhipinti"). D. 1. Doe's allegations led to criminal charges being filed in state court against Occhipinti and, in 2024, Occhipinti pled guilty to two counts of rape of a child. D. 97. Relying chiefly on Occhipinti's guilty plea, Doe has moved for partial summary judgment as to Count I. D. 96. The City has moved for summary judgment on all Counts. D. 125. For the reasons stated

1

below, the Court ALLOWS the City's motion for summary judgment, D. 125, as to Counts III, IV and V and the portion of Count II that Doe now asserts a claim of negligent hiring, id., and DENIES same as to Counts I, VI and the portion of Count II that alleges negligent retention.  As to Doe's motion for partial summary judgment as to Count I, D. 96, the Court ALLOWS the motion.

## II.      Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F. 3d 223, 227 (1st Cir. 1996)). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F. 3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor," Borges ex rel. S.M.B.W. v. Serrano– Isern, 605 F. 3d 1, 5 (1st Cir. 2010).  "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'"  Id. (alteration in original) (quoting Anderson, 477 U.S. at 249). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F. 3d 20, 25 (1st Cir. 2009).  "When deciding cross-motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn."  Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

2

### III.    Factual Background

The Court draws the following facts from Doe's statement of material facts, D. 97, the City's response to same, D. 102, the City's statement of material facts, D. 129,[1] and Doe's response to same, D. 135, as well as the exhibits referenced and attached therein.  The following facts are undisputed.

In 1999, Doe enrolled as a student in the public high school in Peabody where Occhipinti worked as a special education paraprofessional.  D. 97 ¶¶ 1-2; D. 102 ¶¶ 1-2.  Doe had learning disabilities and had an Individualized Education Plan ("IEP").  D. 97 ¶ 3; D. 102 ¶ 3.  School staff assigned Occhipinti to provide Doe with academic support throughout his time in high school. D. 97 ¶ 4; D. 102 ¶ 4.

During this time, Occhipinti hosted parties at her home and invited students, including Doe, to attend.  D. 97 ¶¶ 6-7; D. 102 ¶¶ 6-7.  Doe alleges that, beginning in his freshman year, Occhipinti encouraged him to smoke marijuana, use drugs, and drink alcohol while at her house.  D. 129 ¶¶ 4-7; D. 135 ¶¶ 4-7.  Doe alleges that this relationship became physical.  D. 129 ¶ 6; D. 135 ¶ 6.  When Doe was fifteen years old, Occhipinti performed oral sex on Doe on one occasion and had him perform oral sex on her on another occasion.  D. 97 ¶¶ 8-10; D. 102 ¶¶ 8-10.  Doe alleges that additional instances of sexual contact occurred while at Occhipinti's home and in her car.  D. 129 ¶ 8; D. 135 ¶ 8.  Doe did not tell any adult about the abuse until years later.  D. 129 ¶¶ 12-13; D. 135 ¶¶ 12-13.

As a result of Doe's allegations of sexual assault, criminal charges were filed against Occhipinti in state court.  D. 97 ¶¶ 12-15; D. 102 ¶¶ 12-15.  On November 6, 2024, Occhipinti

---

[1] The Court ALLOWS the City's (unopposed) motion to file its statement of undisputed facts, D. 127; D. 128, *nunc pro tunc* and has considered that filing, D. 129, along with the other motion papers and opposition.

pled guilty to two counts of rape of a child, Doe. D. 97 ¶¶ 16-17; D. 102 ¶¶ 16-17. At this hearing, the prosecutor summarized the facts as the government would have presented them during trial: that Occhipinti was assigned to work with Doe at Peabody High School as a paraprofessional, that Occhipinti would invite Doe and other students to her house, and that, between April 25, 2000, and June 30, 2001, Occhipinti sexually assaulted Doe twice, in the form of oral sex, when he was fifteen years old. D. 97 ¶19; D. 102 ¶ 19. Occhipinti stated that the facts, as presented by the prosecutor, were true and admitted that she had committed the charged criminal conduct. D. 97 ¶¶ 20-23; D. 102 ¶¶ 20-23.

## IV.    Procedural History

Doe instituted this action on September 12, 2019 against the City and Montgomery. D. 1. Montgomery moved to dismiss all claims against him for failure to state a claim, D. 20, and the Court allowed the motion. D. 45. The Court allowed a stay of this action during the pendency of the criminal case against Occhipinti. D. 51; D. 55; D. 57; D. 59; D. 61; D. 63; D. 65; D. 67; D. 69; D. 71; D. 74; D. 91. In 2023, the criminal trial went forward and a jury acquitted Occhipinti of two of the counts but there was a mistrial as to the two, other counts. D. 76. Instead of a retrial, Occhipinti pled guilty to the two, remaining counts on November 6, 2024. D. 93. Following Occhipinti's guilty plea, the parties proceeded with discovery in this matter. D. 94. Doe now has moved for partial summary judgment as to Count I, D. 96, and the City has moved for summary judgment as to all counts, D. 125. The Court heard the parties on the pending motions and took these matters under advisement. D. 137.

## V.    Discussion

### A.    Count I (Section 1C Claim)

#### 1.    The Standard Applicable to Section 1C Claims

4

Section 1C "gives students who are sexually harassed in violation of [Mass. Gen. Laws] c. 151C, § 2(g), access to the remedial provisions of [Mass. Gen. Laws] c. 151B, § 9." Doe 1 v. City of Holyoke, 725 F. Supp. 3d 115, 131 (D. Mass. 2024) (alterations in original) (quotations omitted) (quoting Lowery v. Klemm, 446 Mass. 572, 578 (2006)); see Doe v. Fournier, 851 F. Supp. 2d 207, 217 (D. Mass. 2012), on reconsideration in part (Mar. 20, 2012) (concluding that "public secondary schools . . . are educational institutions as defined by chapter 151C, and Plaintiff may bring a claim for sexual harassment in [public high school] under chapter 214"). "Chapter 214 merely expands who is protected by ch. 151C and the remedies available to them, while ch. 151C remains the source of the substantive law." Doe v. Bradshaw, 203 F. Supp. 3d 168, 188-89 (D. Mass. 2016).

Neither the Supreme Judicial Court nor the Massachusetts Appeals Court has decided whether a strict liability or deliberate indifference standard applies to Section 1C claims. D. 98 at 6 (recognizing same); D. 101 at 5 (recognizing same). Neither party has cited any Supreme Judicial Court cases on this issue,[2] and the Court has not found any. The parties cite the Massachusetts Appeals Court's decision in Morrison, D. 98 at 7; D. 101 at 5-6; D. 126 at 12-14, but there the Appeals Court expressly did not reach the issue, see Morrison v. Northern Essex Comm. Coll., 56 Mass. App. Ct. 784, 795 n.17 (Mass. App. Ct. 2002). Instead, in considering whether a plaintiff's harassment claims under Mass. Gen. L. c. 151C ("Chapter 151C") were time-barred, the Appeals Court declined to "address whether a c. 151C claim against an educational institution requires that its administrators have knowledge of harassment perpetrated by its . . . teachers, a requirement imposed on claims under Title IX." Id. Accordingly, it remains

---

[2] Doe cites Supreme Judicial Court cases discussing the purpose and scope of Section 1C, D. 98 at 5-6, see, e.g., Lowery, 446 Mass. at 578; Guzman v. Lowinger, 422 Mass. 570, 571 (Mass. 1996), but none that address the issue of the applicable standard for such claims.

"an unsettled question under Massachusetts law what the proper standard is[—deliberate indifference or strict liability—] for determining institutional liability for sexual harassment claims made pursuant to ch. 214, § 1C, where those claims are defined by ch. 151C." Harbi v. Massachusetts Inst. of Tech., No. 16-cv-12394-FDS, 2017 WL 3841483, at *5 n.2 (D. Mass. Sept. 1, 2017).

Doe relies upon Bradshaw, a decision of another session of this Court (Woodlock, J.) that applied strict liability to a Section 1C claim at summary judgment and the Court has also found a Superior Court case that has come to the same conclusion. Doe on Behalf of Doe v. Town of Hopkinton, No. 1281-cv-03399, 2017 WL 1553440, at *4 (Mass. Super. Mar. 7, 2017). In Bradshaw, a public school paraprofessional and soccer coach picked up the plaintiff student from her home, took her to a secluded location and sexually assaulted her. Bradshaw, 203 F. Supp. 3d at 173. In determining whether to apply strict liability or deliberate indifference to claims brought under Section 1C against the town, the court compared Chapter 151C to Mass. Gen. L. c. 151B ("Chapter 151B"), "which prohibits sexual harassment in the workplace, and which, like chapter 151C, can support chapter 214 claims." Id. at 189. The court reasoned that "strict liability was found [under Chapter 151B] based on statutory language present in 151B but not 151C," such that "[t]he existence of strict liability for sexual harassment in the workplace [under Chapter 151B] . . . offer[ed] little insight into whether the legislature intended strict liability to exist in a school [under Section 1C]." Id. The court then distinguished Section 1C from Title IX by reasoning that, "[u]nlike Title IX, chapters 214 and 151C provide an express cause of action that is not couched as a funding condition; [such that] the arguments for a deliberate indifference standard are inapplicable [to Section 1C]." Id. at 189-90. In trying to predict what standard the state appellate courts would choose, the court also noted that an Appeals Court justice, "while

reserving the question [of which standard to apply], did dwell on the distinctions between Title IX and chapter 151C, indicating a discomfort with the deliberate indifference standard." Id. at 190. Given this legal landscape, the Bradshaw court applied a strict liability standard to the Section 1C claims against the town. Id.

In Town of Hopkinton, the court made the same observation about the difference in language between c. 151B which prohibits discrimination by 'an employer, by himself or his agent' but that c. 151C does not have any comparable language but rather provides that "an educational institution" not sexually harass students in any program or course of study in any educational institution. Town of Hopkinton, 2017 WL 1553440, at *4; see Mass. Gen. L. c. 151B § 4 (defining unlawful practices "for an employer, by himself or his agent"). Addressing the analysis in College-Town Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 400 Mass, 156, 167 (1987) (relying upon the statutory language in c. 151B prohibiting discrimination by the employer or his agents, to conclude that an employer was strictly liable for both quid pro quo sexual harassment and hostile work environment), the court noted that College-Town's reasoning for this conclusion was that "'it is the authority conferred upon a supervisor by the employer that makes the supervisor particularly able to force subordinates to submit to sexual harassment.'" Town of Hopkinton, 2017 WL 1553440, at *4 (quoting College-Town, 400 Mass. at 165). Reasoning that this "rationale applies equally to claims involving sexual harassment of a student by a teacher, in that a teacher, like a supervisor, is conferred with authority over his or her students," the court concluded that "a school is strictly liable under c. 151C for the sexual harassment of a student by a teacher." Id.

Moreover, the absence of the c. 151B language (i.e., for "an employer, by himself or his agent," Mass. Gen. L. c. 151B § 4) in c. 151C is not as significant as the City suggests, D. 126 at

12-14, where the prohibited harassment under c. 151C is aimed at an "educational institution," Mass. Gen. L. c. 151C, §§ 1(c), 2, an entity which necessarily can only act through its agents. See Ericson v. Syracuse Univ., 35 F. Supp. 2d 326, 329 (S.D.N.Y. 1999) (noting that "a corporation or other institution (like Syracuse University) can only act through its agents"); Badger v. Katahdin Valley Health Ctr., No. 18-cv-00227-NT, 2018 WL 3655904, at *3 n.4 (D. Me. Aug. 2, 2018) (noting that health center was an "entity" and "as such . . . can only act through its agents or employees"). That is, where an "employer" under c. 151B could be a natural person, it was necessary to provide expressly for liability for the employer and his or her agents but not so under c. 151C where liability for an "educational institution" would necessarily arise from the actions of its agents or employees.

Where the state appellate courts have not spoken to the appropriate standard, the Court has to consider what standard the state appellate courts would apply. See Bradshaw, 203 F. Supp. 3d at 190. Given the persuasive reasoning of Bradshaw and Town of Hopkinton, this Court agrees that strict liability, not deliberate indifference as the City contends, is the standard that applies for Section 1C claims.

### 2.    Applying Strict Liability Here

Since both parties have moved for summary judgment on this Section 1C claim, the Court needs to decide, even as strict liability applies to this claim, whether either party is entitled summary judgment. It is undisputed that Occhipinti, employed by the City, subjected Doe to sexual harassment (in the form of sexual assault twice when he was fifteen years old). D. 97 ¶¶ 8-10; D. 102 ¶¶ 8-10. A claim under Section 1C requires a showing that an educational institution not "sexually harass students in any program or course of study in any educational institution." Mass. Gen. L. c. 151C, § 1(g). Accordingly, on this record, it is undisputed that the sexual

harassment occurred, but for Doe to be entitled to summary judgment, it must also be undisputed that same occurred in a "program or course of study" and "in any educational institution." Id. As the admitted sexual harassment occurred off school grounds, the Court turns to discussion of these elements.

In Bradshaw, the court applied strict liability to claims brought under Section 1C where the underlying sexual assault occurred off school property. Bradshaw, 203 F. Supp. 3d at 173, 189-90. In addressing what it recognized as a "novel question of law concerning municipal responsibility for the acts of an employee," the court noted that the student's "psychological traumas, rooted in [the paraprofessional]'s physical acts, made the school itself a traumatic site; [such that] interference with her education [was] manifest." Id. at 189. The court also addressed defendants' arguments that the paraprofessional's conduct was outside the scope of his employment, such that the school should not be subjected to vicarious liability, by (1) distinguishing statutory liability under Chapter 151C from "common law tort liability," and (2) reasoning that "since sexual harassment will rarely, if ever, fall within the scope of employment, such an argument cannot be squared with the existence of strict liability under [Chapter 151B]." Id. at 190 n.14 (citation omitted).

Indeed, considering case law addressing Chapter 151B claims, the "location of the purported harassment is not dispositive." Nicholson v. Mass. Bay Transp. Auth., 783 F. Supp. 3d 506, 519 (D. Mass. 2025) (noting that "[s]uch a limited reading of the statute would preclude, for example, a supervisor's lewd comments made to a subordinate during an off-premises social event"), appeal docketed, No. 25-1557 (1st Cir. June 10, 2025); see Brimage v. City of Bos., No. 97-cv-1912, 2001 WL 69488, at *3 (Mass. Super. Jan. 24, 2001) (applying strict liability to supervisor's "conduct both at the place of employment and away from the place of employment,"

including his off-premises rape of a subordinate, because "[t]o reiterate . . . its importance, under c. 151B, an employer is 'strictly liable' for sexual harassment committed by its supervisors"). Rather, the key consideration is whether the harassment is sufficiently linked to the workplace. Nicholson, 783 F. Supp. 3d at 518-19; see Salvi v. Suffolk Cnty. Sheriff's Dep't, 67 Mass. App. Ct. 596, 605 (2006) (providing that "significant out-of-work harassment" may be considered "[i]n determining whether the work environment is hostile" under Chapter 151B); see also Langton v. Mass. Dep't of State Police, No. 2013-01682, 2013 WL 5531398, at *1-2 (Mass. Super. Sept. 26, 2013) (rejecting argument that vandalism at plaintiff's home and emails to his personal email account could not support Chapter 151B claim); cf. Downey v. Johnson, 104 Mass. App. Ct. 361, 372 n.28 (2024) (noting, in coworker-perpetrated-harassment case, that out-of-workplace conduct that occurred while plaintiff and colleague still had "positive workplace relationship" was "too attenuated from the workplace to support an actionable hostile work environment claim").

Here, it is undisputed that Occhipinti was assigned by the school to Doe to provide academic support, D. 97 ¶ 4; D. 102 ¶ 4, and that she instead sexually assaulted Doe twice when he receiving this support, D. 97 ¶¶ 8-10; D. 102 ¶¶ 8-10. It is also undisputed that Occhipinti continued to assist Doe at school as his assigned paraprofessional before and after both instances. D. 97 ¶ 11; D. 102 ¶ 11. Doe has provided evidence that further sexual contact occurred both on and off school property. D. 135 ¶¶ 1, 10. Even limiting the analysis only to the undisputed facts, i.e., the two off-campus assaults, D. 97 ¶¶ 8-10; D. 102 ¶¶ 8-10, and Occhipinti's continued classroom presence, D. 97 ¶ 11; D. 102 ¶ 11, strict liability applies to Occhipinti's conduct here as it did in Bradshaw, 203 F. Supp. 3d at 189. Accordingly, even where the undisputed facts show that the undisputed sexual harassment occurred off school grounds, strict liability still applies.

Accordingly, the Court ALLOWS Doe's motion for partial summary judgment as to Count I, D. 96, and DENIES the City's motion as to Count I, D. 125.

### B.    Count V (Title IX Claim)

To state a Title IX claim against the City, Doe must establish that the City was "'deliberately indifferent to known acts of sexual harassment of a student by a teacher.'" Wadsworth v. Nguyen, 129 F.4th 38, 69 (1st Cir. 2025) (quoting Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 7 (1st Cir. 2020)). Such "[l]iability is 'predicated upon notice to an appropriate person,'" id. (quoting Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998)), and an appropriate person is "an 'official . . . with authority to take corrective action to end the discrimination.'" Id. at 70 (quoting Gebser, 524 U.S. at 288, 290). "Whether an official has such authority is a factual inquiry that depends on the duties the school delegates to them." Id. "Deliberate indifference requires '(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that . . . likelihood.'" Bradshaw, 203 F. Supp. 3d at 191 (quoting Barber ex rel. Barber v. Colorado Dep't of Revenue, 562 F.3d 1222, 1229 (10th Cir.2009)). By requiring actual knowledge of harassment, the "deliberate indifference standard [under Title IX] has considerable bite." Santiago v. Puerto Rico, 655 F.3d 61, 73 (1st Cir. 2011) (describing requirement as "stringent"). Assessing Doe's Title IX claim against the City therefore involves three inquiries: "(1) did the plaintiff identify an 'appropriate person' ('i.e., a school district official with the authority to take corrective measures in response to actual notice of sexual harassment'), (2) was the substance of the actual notice 'sufficient to alert the school official of the possibility of . . . harassment,' and (3) did that official 'exhibit deliberate indifference to the harassment.'" Wadsworth, 129 F.4th at 69 (quoting Doe v. Sch. Bd. of Broward Cnty., 604 F.3d 1248, 1254 (11th Cir. 2010)).

11

### 1.    Doe Has Not Established that an 'Appropriate Person' Had Actual Knowledge of Occhipinti's Conduct

The parties chiefly dispute whether the City had actual knowledge of the harassment.  See, e.g., D. 126 at 12-13 (arguing "there are no allegations . . . to support that Defendant received any report and/or notice of Occhipinti's alleged conduct"); D. 134 at 17 (disputing same).  "The actual knowledge requirement imposes a higher standard for Title IX claims" than Section 1983 claims where actual or constructive knowledge suffices.  Bradshaw, 203 F. Supp. 3d at 185, and requires "that the official who is informed of the alleged harassment be a person who, at a minimum, has the authority to institute corrective measures."  Santiago, 655 F.3d at 74.  In making this determination, courts have looked to a school official's rank within the school, their authority to respond under the school's harassment policy and their disciplinary authority.  See Wadsworth, 129 F.4th at 70; Santiago, 655 F.3d at 74-75.  Principals, Gebser, 524 U.S. at 291, assistant principals, Wadsworth, 129 F.4th at 70, and school administrators, Bradshaw, 203 F. Supp. 3d at 185-86, have, in some instances, been considered such an "'appropriate person'" for purposes of Title IX.  "[R]ank-and-file teacher[s]," however, typically do not meet this requirement, as "the broader point is to distinguish between school officials, where by virtue of their position, it is appropriate to hold the [municipality] accountable for their failure to act and others, where it is not."  Wadsworth v. Maine Sch. Admin. Dist. 40/Reg'l Sch. Unit 40, 663 F. Supp. 3d 83, 127 (D. Me. 2023), aff'd in part, rev'd in part on other grounds and remanded sub nom., Wadsworth, 129 F.4th 38.

Here, the City denies any knowledge of the abuse.  D. 126 at 1.  Indeed, the undisputed facts establish that Doe did not tell "teachers, administrators or any other adult of any alleged abuse" during its occurrence or after his graduation, D. 129 ¶ 12; D. 135 ¶ 12, that Doe testified that Occhipinti "never acted in a sexually abusive or inappropriate way toward [Doe] in Mr.

12

Montgomery's presence," D. 129 ¶ 15; D. 135 ¶ 15, that Doe never heard anyone tell Montgomery about the abuse, D. 129 ¶ 17; D. 135 ¶ 17, and that Montgomery testified to his lack of knowledge about the abuse, D. 129 ¶¶ 18-20; D. 135 ¶¶ 18-20.  Doe disputes the City's ignorance, however, and claims in opposition that (1) unnamed teachers, see, e.g., D. 134 at 17 (stating that Occhipinti's "constant unnecessary physical contact during class [was] in clear view of the teachers leading the class"); D. 135 ¶¶ 1, 10 (alleging same); D. 134-5 at 5 (providing deposition testimony of former student that Occhipinti and Doe were "always around each other"); D. 134-6 at 5 (providing deposition testimony of another student that Doe was Occhipinti's "favorite student" and she "always . . . had her arm wrapped around him or, . . . [was] always up and against him"), and (2) Montgomery, see, e.g., D. 134-11 at 1 (providing affidavit of a "close friend[]" of Occhipinti stating that Occhipinti "inferred her boss at the school was aware of the situation because [Occhipinti] was involved in a sexual relationship with her boss"), had actual knowledge of the abuse, D. 134 at 17.

Neither the disputed nor undisputed facts support that either the unidentified teachers who allegedly witnessed Occhipinti's touching of Doe in class or Montgomery, specifically, qualify as "'appropriate person[s]'" for purposes of establishing actual knowledge on the part of the City. Wadsworth, 129 F.4th at 69 (quoting Gebser, 524 U.S. at 290); see Santiago, 655 F.3d at 74 (explaining that "it is clear that a lesser functionary within the school [say, a teacher or social worker] does not have the authority to order the taking of corrective measures").  As to actual knowledge, Doe has provided facts that Montgomery was the head of the special education department at the school. See, e.g., D. 134-13 at 12.  The record does not speak to Montgomery's disciplinary authority, cf. Wadsworth, 129 F.4th at 70 (upholding lower court's determination that "assistant principals were appropriate persons under Title IX, . . . [where] the district court

expressly acknowledged that the assistant principals had no disciplinary power over [assailant] in reaching its conclusion"), but Montgomery was Occhipinti's department head, D. 134-13 at 12. The central inquiry in this analysis is whether Montgomery's alleged knowledge of the abuse can be appropriately imputed to the City. See Gebser, 524 U.S. at 289. Doe does not allege that Montgomery had any policy making or enforcement authority within the school, cf. Wadsworth, 129 F.4th at 70 (upholding lower court's determination that "assistant principals were appropriate persons under Title IX, [where] the district court focused on . . . their authority to respond under the school's sexual harassment policy"). Doe has also not established the significance of Montgomery's role as department head within the school administration. Cf. Wadsworth, 129 F.4th at 70 (upholding lower court's determination that "assistant principals were appropriate persons under Title IX, [where] the district court focused on their high rank as officials within the school").

Accordingly, as a matter of law, the undisputed facts do not establish Montgomery as a person whose knowledge of abuse could be properly imputed to the City.

> 2.    *Even if Montgomery Was an "Appropriate Person," the Undisputed Facts Demonstrate that He Did Not Have Actual Knowledge of Occhipinti's Conduct*

Even assuming, *arguendo*, that Doe established Montgomery as an "'appropriate person,'" id. at 69 (Gebser, 524 U.S. at 290), for purposes of Title IX, Doe still fails to point to any material evidence suggesting that Montgomery had knowledge of the abuse. In other words, Doe as the nonmovant "must demonstrate, 'through submissions of evidentiary quality, that a trialworthy issue persists,'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006)).

14

Doe relies upon the following to establish Montgomery's knowledge of the abuse, D. 135 ¶¶ 1, 10, 14: an affidavit from a former student that "[f]riends of [hers] told [her] they would party at [Occhipinti's] house, and occasionally, [Montgomery] would be there," D. 134-3 at 2; Doe's state trial testimony that Montgomery attended parties at Occhipinti's house and otherwise visited her home, D. 134-7 at 14, 19; the state trial testimony of a former student that she had seen Montgomery at Occhipinti's residence, D. 134-8 at 4; Doe's affidavit that he saw Montgomery there during parties multiple times during his sophomore and junior years, D. 134-18 at 1; Montgomery's deposition testimony that he would go to Occhipinti's residence occasionally, D. 134-14 at 3, but that he did not recall seeing students there, id. at 4; Occhipinti's affidavit stating that Montgomery knew about Occhipinti's at-home tutoring of Doe, 134-12 at 1; Doe's deposition testimony that he "just thought" Montgomery knew about the abuse, D. 134-15 at 7; and another affidavit from a "close friend[]" of Occhipinti stating that Occhipinti "inferred" her supervisor, i.e. Montgomery, knew about "the situation" with Doe, D. 134-11 at 1.

a)    Evidence Establishing that Montgomery Knew About Parties and Tutoring at Occhipinti's Residence Does Not Establish Actual Knowledge of Sexual Harassment of Doe

Evidence that Montgomery would attend parties at Occhipinti's house where students were present, i.e., D. 134-3 at 2; D. 134-7 at 14, 19; D. 134-8 at 4; D. 134-18 at 1, as a matter of law, does not demonstrate his actual knowledge of the abuse. "[I]nappropriate behavior of a different nature than the eventual harassment cannot give rise to actual knowledge for Title IX purposes." Bradshaw, 203 F. Supp. 3d at 185. In Bradshaw, the court determined that rumors that the paraprofessional "had been buying alcohol for students . . . must be excluded from the analysis of Title IX liability" because, "[w]hile potentially connected to [his] sexual abuse, allegations of alcohol purchase do not contribute to actual knowledge of sexual abuse." Id. Similar here,

evidence that Montgomery visited Occhipinti's home after hours, D. 134-14 at 3, even when students were present, D. 134-8 at 4, and even when drugs or alcohol may have been present, id. at 4-5, *arguendo*, "do[es] not contribute to [his] actual knowledge of sexual abuse" because it does not go to Montgomery's knowledge of Occhipinti's "sexual relationships with . . . students." Bradshaw, 203 F. Supp. 3d at 185; see Hewes v. Pangburn, 162 F.4th 177, 198 (1st Cir. 2025) (distinguishing Wadsworth, 129 F.4th at 71 where "school administrators had actual knowledge" since they had "personally witnessed highly inappropriate conduct such that sexual harassment was an obvious logical inference").

The same reasoning also applies to Occhipinti's affidavit, offered by Doe, D. 135 ¶ 1, which provides that Montgomery knew about Occhipinti's at-home tutoring of Doe, and that she was compensated for same by the school, D. 134-12 at 1-2. The Court is unable to discern how either fact indicates that Montgomery had actual knowledge of Occhipinti's sexual abuse of Doe, where the act of at-home tutoring does not, without more, establish inappropriate conduct that could "give rise to actual knowledge for Title IX purposes," Bradshaw, 203 F. Supp. 3d at 185. The Court "cannot infer, without more," that Montgomery had actual knowledge of the abuse, particularly where neither the disputed nor undisputed facts indicate that Montgomery "directly observed any [sexually] inappropriate conduct by" Occhipinti. Hewes, 162 F.4th at 198.

    b)  <u>Doe's Other Proffered Evidence Does Not Present a Genuine Issue of Material Fact as to Montgomery's Actual Knowledge</u>

The remaining evidence going to Montgomery's knowledge of the abuse—i.e., Doe's testimony that he believed Montgomery knew about the abuse, D. 134-15 at 7, and the affidavit of Occhipinti's friend that Occhipinti "inferred" Montgomery knew about the abuse, D. 134-11 at 1—also fail, as a matter of law, to create a genuine factual dispute as to Montgomery's actual knowledge of the abuse.

16

Doe's testimony reads as follows:  "I just thought [Montgomery] knew . . . I don't know how I knew that."  D. 134-15 at 7-8.  This testimony does not, as a matter of law, raise a genuine dispute as to whether Montgomery had actual knowledge of the abuse under the "stringent" actual notice requirement of Title IX, Santiago, 655 F.3d at 73; cf. Hewes, 162 F.4th at 197-98 (determining no actual knowledge where school officials "saw [assailant teacher] give [student] a ride home" and where "rumors" about the student having an older boyfriend were "prevalent").  In disputing the City's contention that Doe's testimony is unsupported by other evidence, Doe cites evidence regarding Montgomery's presence at parties, discussed above, as well as the affidavit of Occhipinti's friend.  D. 129 ¶ 14; D. 135 ¶ 14.

The affidavit, D. 134-11, however, amounts to hearsay, or "an out-of-court statement offered to prove the truth of the matter asserted."  United States v. Meserve, 271 F.3d 314, 319 (1st Cir. 2001) (citations omitted).  "Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."  Selfridge v. Jama, 172 F. Supp. 3d 397, 411 (D. Mass. 2016). (quotations omitted) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990)).  "To the extent [an affidavit] contain[s] hearsay . . . the operative question is whether such evidence could be presented in a form that would be admissible at trial."  BRT Mgmt., LLC v. Malden Storage, LLC, No. 17-cv-10005-FDS, 2023 WL 8719961, at *8 (D. Mass. Dec. 18, 2023).  Here, the affidavit purports to provide what Occhipinti thought at the time of the abuse, D. 134-11 at 1 (stating Occhipinti "inferred her boss at the school was aware of the situation"), drawing from a 2019 dinner where Occhipinti "confided [in her friend] . . . details of a civil case that had been filed against her and the [City] by a male former student," id.  Doe relies upon the statement for its truth, i.e., that Occhipinti inferred Montgomery knew about the abuse, id.; D. 134 at 14; see Doe v. D'Agostino, 367 F. Supp. 2d 157, 165 (D. Mass. 2005) (explaining that, because "the

17

[challenged] statement [in affidavit] cannot be offered for any reason other than the truth of the matter asserted," it "will not be considered in [the] court's analysis" of the parties' motions for summary judgment). No exception to the hearsay rule has been argued, and it appears that none applies. See Selfridge, 172 F. Supp. 3d at 409-10 (providing that "[t]he proponent of the challenged evidence must prove its admissibility"). Accordingly, this document cannot be relied upon at the summary judgment stage.

The competent evidence before the Court demonstrates, as a matter of law, that the City lacked actual knowledge of Occhipinti's abuse of Doe. Because such knowledge is an element of Doe's Title IX claim, the City is entitled to summary judgment as to this claim. In light of the foregoing, the City's motion is ALLOWED as to Doe's claim under Title IX (Count V).

C.      **Counts III (Substantive Due Process claim) and IV (Equal Protection claim)**

Counts III and IV assert claims under 42 U.S.C. § 1983 against the City, alleging violations of Doe's substantive due process rights and his right to equal protection under the laws, respectively. D. 1 ¶¶ 208-236. In moving for summary judgment as to these claims, the City argues that Occhipinti did not act under state law, D. 126 at 6-7, and that her conduct was not caused by any City policy, id. at 10-11. The City further argues that Doe's substantive due process claim fails because the City lacked knowledge of the abuse, id. at 7-9, and that Doe's equal protection claim fails because Doe has not established that he was subjected to disparate treatment, id. at 9-10. Doe counters, as to the substantive due process claim, that the City's failure to provide "the most basic training about appropriate relationships with teenage students" was a but-for cause of the abuse, D. 134 at 14, and, as to the equal protection claim, that the school's custom of assigning students with IEPs to paraprofessionals by gender "facilitated the sexual abuse inflicted upon [Doe]," id. at 15.

18

As a general matter, to assert a claim under § 1983, "'[a plaintiff] must show: (1) that the complained-of conduct was committed under the color of state law, and (2) that such conduct violated [their] constitutional or federal statutory rights.'" Wadsworth, 129 F.4th at 50 (alterations in original) (quoting Miller v. Town of Wenham, 833 F.3d 46, 51 (1st Cir. 2016)). A municipality, like the City, "cannot be held responsible unless '[an] action pursuant to official municipal policy caused their injury,' and 'municipal decisionmakers either knew or should have known . . . but nonetheless exhibited deliberate indifference'" to the injury. Id. at 66 (alteration in original) (quoting Cosenza v. City of Worcester, 120 F.4th 30, 38 (1st Cir. 2024)). "The knowledge necessary to show deliberate indifference 'can be imputed to a municipality through a pattern of prior constitutional violations' or, 'in very rare cases,' from a single constitutional violation if 'the violation of a federal right is a highly predictable consequence of a failure to equip governmental actors with specific tools to handle recurring situations.'" Hewes, 162 F.4th at 192 (quoting Wadsworth, 129 F.4th at 68).

### 1.    *Occhipinti Was Acting Under Color of Law*

In moving for summary judgment, the City contends that Occhipinti did not act under color of state law in abusing Doe because the undisputed facts demonstrate that the City "did not have notice of the actions alleged." D. 126 at 6-7. In so doing, the City points to Doe's allegations that the abuse took place at Occhipinti's "home and in her car." Id.; see D. 129 ¶ 8; D. 135 ¶ 8.

Even assuming *arguendo* that the abuse only took place off school property, which Doe disputes, see, e.g., D. 135 ¶ 1 (alleging "[g]rooming and acts of abuse also occurred openly on school property"), Occhipinti remains a state actor. In Bradshaw, for instance, the alleged "sexual assaults and inappropriate behavior took place off school property and outside school hours." Bradshaw, 203 F. Supp. 3d at 177 n.4. Nonetheless, because the assailant paraprofessional "used

his position as a public school employee . . . to violate [students'] rights," the court determined that his conduct was "enough to make him a state actor under § 1983 and the Fourteenth Amendment." Id. The same reasoning applies here—because the undisputed facts support that Occhipinti used her position as a paraprofessional to sexually abuse Doe, D. 97 ¶¶ 1-23; D. 102 ¶¶ 1-23, she qualifies as a state actor for purposes of § 1983.

### 2.    Substantive Due Process – Failure to Train (Count III)

In moving for summary judgment as to Count III, the City refutes any knowledge of the abuse. D. 126 at 8. While Doe alleges multiple theories of injury under Count III in the complaint, D. 1 at ¶¶ 208-23, his argument in opposition focuses on one:  Doe's contention that Occhipinti "would not have sexually abused [Doe] (a violation of his bodily integrity) if [the City] had provided the most basic training about appropriate relationships with teenage students." D. 134 at 14. Accordingly, the Court focuses its analysis of Doe's substantive due process claim[3] on his failure to train theory.

"A municipality can be liable for failure to train, supervise and discipline its employees if that failure 'causes a constitutional violation and amounts to deliberate indifference to the rights of' third parties.'" Bradshaw, 203 F. Supp. 3d at 184 (quoting DiRico v. City of Quincy, 404 F.3d 464, 468 (1st Cir. 2005)); see Wadsworth, 129 F.4th at 68 (providing same). "For failure to train claims, the causation element is satisfied if 'the injury [would] have been avoided had the

---

[3] While Doe does not engage with the standard for stating a substantive due process violation in his opposition, the Court provides it here:  "To establish a substantive due process claim, a plaintiff 'must show . . . that the acts were so egregious as to shock the conscience' and 'that they deprived him of a protected interest in life, liberty, or property.'" Pollard v. Georgetown Sch. Dist., 132 F. Supp. 3d 208, 227 (D. Mass. 2015) (quoting Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006)). To shock the conscience, the alleged conduct must be "'extreme and egregious'" or "'truly outrageous, uncivilized, and intolerable.'" Id. (quoting Pagan, 448 F.3d at 32).

employee been trained under a program that was not deficient in the identified respect.'" Caldwell v. Cambra, 802 F. Supp. 3d 8, 46 (D. Mass. 2025) (alteration in original) (quoting City of Canton v. Harris, 489 U.S. 378, 391-92 (1989)). The training deficiency "'must be closely related to the ultimate injury.'" Id. (quoting City of Canton, 489 U.S. at 391). "Deliberate indifference requires a showing that [the municipality] disregarded a known or obvious risk of serious harm following from its failure to develop an adequate training program." Wadsworth, 129 F.4th at 68.

The question, therefore, is whether the City's failure to train caused the abuse, and whether the City had knowledge of the abuse and acted with deliberate indifference. In his opposition, D. 134 at 14, as to Count III, Doe points to: (1) an affidavit from a former friend of Occhipinti, stating that Occhipinti believed that her conduct was tacitly approved by her boss based on his own allegedly similar behavior toward students, D. 134-11 at 1, (2) Occhipinti's employment records, indicating that she was hired in the absence of formal training, D. 134-1 at 2, and (3) the testimony of the former assistant principal, who did not recall whether the school had policies related to faculty "giving students rides in their cars" or students visiting "faculty members' homes," D. 134-13 at 3-4, to establish that his substantive due process rights were violated by the City's failure to train.

None of these facts, however, establish that the City's alleged failure to train Occhipinti caused her abuse of Doe. Bradshaw, 203 F. Supp. 3d at 184. First, the affidavit of Occhipinti's former friend, D. 134-11 at 1, amounts to inadmissible hearsay for the reasons discussed above. As to the remainder of the evidence cited by Doe in his opposition on this point—i.e., Occhipinti's employment history, D. 134-1 at 2, and the former assistant principal's testimony suggesting that the school lacked policies governing faculty-student interactions outside of school, D. 134-13 at 3-4—at most, it establishes that Occhipinti had no prior experience and that the school might have

21

lacked policies specific to student-teacher interactions outside of school.  Neither fact indicates that Occhipinti abused Doe because the City failed to trained her not to do otherwise.  See Wadsworth, 129 F.4th at 69 ("disagree[ing]" with plaintiff that "consequences of not training staff would have been obvious" to school district because "there is nothing about this highly unusual situation that would suggest that failing to train school staff on how to report sexual harassment . . . would mean that no staff would report sexual harassment that they were aware of" and affirming allowance of summary judgment).

Even assuming that the school provided no training on how to appropriately interact with students, id. at 68, Occhipinti's conduct was plainly criminal, as Doe was a minor, D. 97 ¶ 10; D. 102 ¶ 10.  The Court cannot rely upon the "improbable inference[]" that the existence of training would have stopped Occhipinti's conduct when a basic understanding of the law did not. Vineberg, 548 F.3d at 56 (quotations omitted) (quoting Medina–Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990)); see Wadsworth, 129 F.4th at 69.  Although having training would be advisable, the absence of same here does not sufficiently "shock[] the conscience" for purposes of establishing a substantive due process violation.  Thomas v. Town of Chelmsford, 267 F. Supp. 3d 279, 299 (D. Mass. 2017) (explaining that the "'shock-the-conscience test is an extremely demanding one,'" and determining that there was no "conscience-shocking behavior by the state defendants that led to bodily injury" (quoting Gonzalez–Fuentes v. Molina, 607 F.3d 864, 885 (1st Cir. 2010))).

Accordingly, Doe's substantive due process claim (Count III) fails as a matter of law, and the City is entitled to summary judgment as to same.

### 3.   Equal Protection Claim (Count IV)

In moving for summary judgment as to Count IV, the City contends that Doe has failed to provide a comparator to demonstrate that he subjected to disparate treatment,[4] and generally refutes "that [the City] 'treated' Doe in any manner whatsoever." D. 126 at 10. While Doe again raises multiple theories of liability under Count IV in the complaint, D. 1 ¶¶ 224-36, his argument in opposition only focuses on one: that "students with IEPs were divided by gender and assigned to a teacher or aide of the opposite sex," a custom which "facilitated the sexual abuse inflicted upon [Doe]." D. 134 at 15. Accordingly, the Court focuses its analysis of Doe's equal protection claim on this theory.

"The Equal Protection Clause 'prohibits a state from treating similarly situated persons differently because of their classification in a particular group.'" Pollard, 132 F. Supp. 3d at 222 (quoting Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105-06 (1st Cir. 2015)). To establish an equal protection claim, Plaintiffs must show that "'(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Davis v. Coakley, 802 F.3d 128, 132-33 (1st Cir. 2015) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir.1995)). "Where a plaintiff seeks to impose liability against a municipality on the basis of a custom or practice, rather than a policy, a plaintiff must show that "'(1) the custom is so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice; and (2) the custom must have

---

[4] While Doe does not engage with this argument, the Court notes that "a relevant comparator is not necessarily a requirement under the Equal Protection Clause." Wadsworth, 129 F.4th at 54.

23

been the cause of and the moving force behind the constitutional violation.'" Silva v. Town of Uxbridge, 771 F. Supp. 3d 56, 69 (D. Mass. 2025) (quoting Doe v. City of Northampton, 738 F. Supp. 3d 93, 100 (D. Mass. 2024)).

While unclear, Doe appears to allege that the school's gender-based paraprofessional assignment system was the reason that Doe was assigned to work with Occhipinti, ultimately resulting in the abuse. D. 134 at 15. It is undisputed that Doe was assigned to Occhipinti by school staff. D. 97 ¶ 4; D. 102 ¶ 4. In opposing summary judgment, Doe proffers that other students with IEPs were also assigned to Occhipinti, D. 134-6 at 4 (providing testimony of another student who had Occhipinti as his aide), along with evidence that the school had a custom of assigning students to paraprofessionals based on gender, D. 134-3 at 1 (providing affidavit of former student that "many female students who received special education services . . . were assigned to [Montgomery and] male students were transferred to [Occhipinti]"). Even accepting these facts raised by Doe in opposition, a reasonable jury could not find that this custom was the moving force behind Occhipinti's abuse of Doe. Silva, 771 F. Supp. 3d at 69. In other words, a reasonable jury could not conclude, on this basis and without "any additional evidence talking to Defendants' policies, customs, or practices that would sufficiently raise a genuine dispute of material fact," id. at 70, that the school's paraprofessional assignment system caused Occhipinti's abuse of Doe.

Accordingly, the City is entitled to summary judgment as to Count IV.

### D.    Count II (Negligence Claim)

In Count II, Doe alleges that the City was negligent in its supervision of Occhipinti under Mass. Gen. L. c. 258, § 2. D. 1 ¶¶ 200-07. "The Massachusetts Torts Claims Act ('MTCA') allows for claims against public employers for injuries 'caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment.' As

24

with all negligence claims, a plaintiff 'must establish that the defendant owed the plaintiff a legal duty, and that a breach of that duty proximately caused injury to the plaintiff.'" Stoughton, 2020 WL 4431569, at *3 (citation omitted) (first quoting Mass. Gen. L. c. 258, § 2; then quoting Bradshaw, 203 F. Supp. 3d at 187).

"The act of hiring, retaining, or promoting a public employee can be an original cause of harm under MTCA if that action placed the person in a position to harm the plaintiff." Stoughton, 2020 WL 4431569, at *4. "Although retention is more passive than hiring," Fournier, 851 F. Supp. 2d at 225, the continued retention of an employee "after learning of improper relations with students" can be considered an "original cause of the injury-causing circumstance," Stoughton, 2020 WL 4431569, at *4. In considering negligent retention claims, "[t]he court takes guidance from cases involving negligent hiring claims under the MTCA. In such cases, a plaintiff must present evidence that the public employer 1) failed to exercise due care in the selection of an employee, 2) knew or should have known that the employee who was hired was unfit and posed a danger to others who would come into contact with the employee during the employment, and 3) that the employer's failure proximately caused the injury of which the plaintiff complains." Id. at *5.

Here, the City's motion generally refutes "liab[ility] for negligence" in a single paragraph, lacking any citation to either case law or the record. D. 126 at 11. The City argues that "there is no evidence that anyone other than [Doe] and [Occhipinti] were aware of the private dealings [i.e., abuse]," and that the City "cannot be liable for failing to avoid or stop an abuse of which it had no knowledge." Id. In so doing, the City falls short of its burden under the summary judgment standard. See Carmona, 215 F.3d at 132 (providing that movant "bears the burden of demonstrating the absence of a genuine issue of material fact"). In opposition, Doe argues that the

25

City hired Occhipinti despite her lack of experience, failed to sufficiently supervise her conduct, failed to investigate her in-class favoritism toward Doe, and that school staff (such as Montgomery) failed to report the parties taking place at Occhipinti's home, D. 134 at 12.  Doe further appeals to factual similarities in Stoughton, 2020 WL 4431569, at *1-2, *5 (denying summary judgment as to negligent retention claim where "[m]ost of the sexual encounters happened at [the teacher's] house" and the assailant "exhibit[ed] signs of favoritism").

To the extent that Doe raises a negligent hiring claim now, it fails.  First, Doe did not raise negligent hiring as a theory in the complaint.  D. 1 ¶¶ 200-07; see Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 76 (1st Cir. 2016) (providing that plaintiffs may not raise arguments "for the first time in opposition to [a] motion for summary judgment").  Next, to the extent the Court considers the substance of this claim, it again fails, as Doe has not raised any dispute of material facts indicating that the City's hiring of Occhipinti was negligent.  At most, Doe points to facts the school hired Occhipinti without formal training as a paraprofessional, D. 97 ¶ 1; D. 102 ¶ 1; D. 134-1 at 2.  Occhipinti's mere lack of prior experience does not indicate, however, that she was unfit or a danger for purposes of negligent hiring claim.  Stoughton, 2020 WL 4431569, at *5.

Doe, however, does raise a genuine dispute of material fact as to negligence claim asserted in the complaint, namely that the City negligently retained Occhipinti.  To reiterate, Doe alleges that the City failed to sufficiently supervise Occhipinti's conduct, failed to investigate her in-class favoritism toward Doe and that school staff (such as Montgomery) failed to report the parties taking place at Occhipinti's home, D. 134 at 12.  Whether a reasonable jury could find that the City failed to take reasonable care in retaining Occhipinti, and, ultimately, whether a reasonable jury could find that any such failure proximately caused Occhipinti "to have the opportunity to

26

abuse" Doe, <u>Bradshaw</u>, 203 F. Supp. 3d at 187, "rest[s] on the weighing of evidence and considerations of credibility," <u>Stoughton</u>, 2020 WL 4431569, at *5.

Accordingly, the Court ALLOWS the motion for summary judgment to the extent that Doe now asserts a negligent hiring claim in Count II but DENIES the motion as to the portion of Count II that alleges negligent retention.

### E.    Count VI (Rehabilitation Act claim)

Section 504 of the Rehabilitation Act "bars a school district receiving federal funds from discriminating on the basis of disability or excluding a person with a disability from participating in school programs." <u>Bradshaw</u>, 203 F. Supp. 3d at 190. "An alleged violation of the Rehabilitation Act requires a showing of four elements:  (1) the plaintiff is disabled; (2) the plaintiff sought services from a federally funded entity; (3) the plaintiff was 'otherwise qualified' to receive those services; and (4) the plaintiff was denied those services 'solely by reason of [his] . . . disability.'" <u>Biscan v. Town of Wilmington</u>, 721 F. Supp. 3d 127, 141 (D. Mass. 2024) (quoting <u>Lesley v. Hee Man Chie</u>, 250 F.3d 47, 52-53 (1st Cir. 2001)), <u>on reconsideration on other grounds</u>, 771 F. Supp. 3d 26 (D. Mass. 2025).

Although the City moved for summary judgment on all of Doe's claims, it did not include any arguments related to this claim, Count VI, in its motion papers. <u>See generally</u> D. 125, 126. Given this lack of briefing, the Court cannot determine if the City is entitled to summary judgment and DENIES same on this basis. <u>See</u> <u>Mackey v. Town of Tewksbury</u>, 433 F. Supp. 3d 116, 163 (D. Mass. 2020) (explaining that "failure to adequately develop [argument] . . . amounts to a waiver of the argument for purposes of their summary judgment motion").

27

## VI.    Conclusion

For the foregoing reasons, the Court ALLOWS Doe's motion for partial summary judgment as to Count I, D. 96.  The Court ALLOWS the City's motion for summary judgment, D. 125, as to Counts III, IV, V and the portion of Count II in which Doe now asserts negligent hiring but DENIES that motion as to Count I, VI and the portion of Count II that alleges negligent retention.

**So Ordered.**

/s Denise J. Casper
Chief United States District Judge